**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN E. WOLFF, JR., | ) | CASE NO.  4:11-cv-0454 |
| | ) | |
| Petitioner, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| TERRY TIBBALS, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of John E. Wolff, Jr., ("Petitioner") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the Ohio

Department of Rehabilitation and Correction pursuant to journal entry of sentence in the

case of *State of Ohio vs. Wolff*, Case No. 06-CR-978 (Mahoning County Aug. 29,

2007).  (Doc. No. 23-10.)  For the reasons set forth below, it is recommended that the

petition be dismissed with prejudice.

**I. Relevant Factual Background**

The state appellate court that reviewed Petitioner's conviction and sentence

recited the following facts:

> On September 14, 2006, Wolff was indicted on ten counts of
> rape, in violation of R.C. 2907.02(A)(1)(b)(B), special felony
> (Counts 1-10); three counts of rape, in violation of R.C.
> 2907.02(A)(2)(B), 1st degree felony (Counts 11-13); five
> counts of gross sexual imposition, in violation of R.C.
> 2907.05(A)(4)(B), 3rd degree felony (Counts 14-18); and two
> counts of gross sexual imposition, in violation of R.C.

2907.05(A)(1)(B), 4th degree felony (Counts 19-20), all alleged to have been committed against victim AB. Wolff was additionally indicted on five counts of rape, in violation of R.C. 2907.02(A)(2)(B), 1st degree felony (Counts 21-25); three counts of rape, in violation of R.C. 2907.02(A)(1)(c)(B), 1st degree felony (Counts 26-28); and three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1)(B), 4th degree felony (Counts 29-31), against victim SA.

The charges stemmed from allegations that Wolff sexually abused his two stepdaughters, AB and SA. AB alleged that Wolff sexually abused her when she was eight through fourteen years old, from 2000 to 2006. SA alleged that Wolff sexually abused her when she was thirteen and fourteen years old, in 2000 and 2001.

Wolff's trial before a jury commenced on August 13, 2007. For the State's case in chief, the following witnesses testified: AB; SA; Karen Pico, a school counselor to whom AB reported abuse on April 4, 2006; Selina Summerville, SA's aunt and guardian; John Rusnak, a police officer who took AB's statement on April 4, 2006; Kim Woods, a Children's Services caseworker who performed a forensic interview with AB on April 4, 2006; Janet Gorsuch, a nurse practitioner who examined AB and SA on November 20, 2001 and examined AB on April 4, 2006; and Becky Haddle, a Children's Services forensic investigator who interviewed SA and AB on November 7, 2001.

AB testified that Wolff and AB's mother were married in 1999. Wolff lived with AB and her mother, and her brother. . . . AB testified that she was raped by Wolff, starting when she was eight years old. . . . AB stated that Wolff engaged in sexual activities with her once or twice a week at first, later escalating to most days of the week.

\*   \*   \*

The abuse lasted until 2001, when AB and SA decided to tell their mother and SA's aunt, Selina Summerville about the abuse. Their mother confronted Wolff, who denied the abuse. The following day, AB and SA told Summerville, and they went to an emergency room to have rape kits performed.  AB stated that the medics "found something" on her sister, but nothing on her. . . AB testified that Wolff did

2

not have contact with her for three months after the accusation. However, after those three months, Wolff moved back in with AB and her mother and AB decided she could "give him another chance." AB recanted the accusation to her mother. AB testified that she recanted to her mother because she felt bad for the emotional pain that her mother was going through. AB stated that she did not want to see her mother in an unhappy state, and felt as though she was the one who caused her mother's unhappiness. AB stated that the abuse started back up a few months later, starting with less frequency and then progressing similarly to the last time.

\* \* \*

AB renewed her allegations against Wolff in 2006 [when she told close friends and school officials about the abuse].

The State's second witness, SA, testified that she lives with her Aunt, Summerville, and that she stayed with her mother and Wolff during weekends and summers prior to 2001. When SA was very young, she lived with her biological father. Subsequent to an unspecified event, SA began to live with her aunt, who became her guardian. SA stated that she took special education classes because she was learning disabled, and that Wolff knew that she was learning disabled.

SA stated that she was raped by Wolff, and that the abuse was usually precipitated by her giving Wolff backrubs or stomach rubs. SA did not remember how old she was or the dates of the abuse. SA stated that she verbally resisted. SA was afraid of Wolff because he was bigger and stronger than her. Wolff paddled SA for breaking rules of the house, such as needing to ask permission to get food or drinks. SA testified that she talked with AB about Wolff's abuse, and they decided to tell their mother, then Summerville.

SA remembered going to the hospital after her allegations, and remembered talking to people, but said she did not remember who she talked to. SA later stated that she did remember describing Wolff's abuse in 2001 one time to a woman from Children's Services. She remembered that she was fourteen at the time she went to the hospital, and that the abuse had started approximately one year prior to that. During cross examination, counsel asked if SA had been to

3

doctors before for any reason when she was nine and ten years old. Counsel was stopped from questioning, and after a sidebar conversation that was not recorded, objection to Wolff's questioning was sustained.

The State's third witness, Karen Pico, testified that she was a crisis counselor and interventionist at AB's school. AB asked to speak with her at school on April 4, 2006, and told Pico that she had been raped by her stepfather, and that the abuse had gone on for seven years. Pico testified that AB described various sexual activities with Wolff. AB gave Pico the plastic bag containing [an oral swab that AB had made after Petitioner forced her to engage in fellatio], which Pico gave to the Campbell Police. Pico testified that AB made a report to Officer Rusnak, and that her story remained consistent.

\* \* \*

At a bench discussion before the jury was brought in for the second day of the State's case in chief, Wolff protested the prevention of cross examination of SA regarding previous false allegations of abuse, and previous acts of abuse. Wolff claimed that, had he been permitted to ask his intended questions, he would have asked "had she been previously molested by someone else and had she blamed others for molestations." Wolff stated that he would have asked Summerville about SA's false accusations against Clemente Alicia, who was acquitted of rape, about Mark Belchik, who died before prosecution could happen, and against SA's grandparents. The State argued that questions regarding previous acts of abuse should have been brought up in a Rape Shield Statute hearing three days before trial. The State also argued that Wolff would need to prove that there had been no sexual activity for the false allegations, and that there was medical evidence of sexual activity in the Clemente Alicia case. Wolff argued that the Rape Shield Statute was undermining his right to due process. The trial court found Wolff's argument unpersuasive.

The State continued its case in chief with the testimony of its seventh witness, Janet Gorsuch, the nurse practitioner who performed medical examinations of SA and AB in 2001 and of AB in 2006 at the CAC.

4

In 2001, Gorsuch took a medical history of SA (then age 14) and observed the forensic interview conducted by Haddle. During the interview, SA described Wolff's sexual activities with her. SA stated that, on one occasion, his penis made contact with her anus and she experienced pain in that area the following day. Gorsuch then performed a physical examination, and found some scarring around SA's anus. Gorsuch noted a flattening of the folds around the anus, indicating over-dilation. Gorsuch testified that, based on SA's interview statements along with physical findings, her findings were consistent with sexual abuse. Gorsuch also explained that SA's anal injuries were "nonspecific indicators," meaning they could be caused by anything that might overdilate the anus.

In 2001, Gorsuch took a medical history of AB (then age 9), and observed the forensic interview conducted by Haddle. Gorsuch testified as to AB's interview statements, where AB described various sexual contacts in great detail. Wolff did not object for hearsay or any other reason during this portion of testimony. Gorsuch was unable to perform a complete physical examination of AB due to labial adhesions, which indicated chronic irritation. Gorsuch explained that such chronic irritation was a "nonspecific indicator," meaning it could be caused by a number of things, not necessarily sexual abuse. After treating the labial adhesion, Gorsuch later completed an examination of AB, finding nothing abnormal.

On April 4, 2006, Gorsuch went through the same procedure with AB (then age 14), again taking a medical history and observing the forensic interview conducted by Woods. In AB's interview, she described actions similar to those described in 2001. AB additionally described an event where Wolff vaginally penetrated her, causing bleeding for two days. Gorsuch then performed a physical examination, and found redness of the labia minora, a tear in AB's hymen, scarring in AB's posterior fourchette, and a healing anal fissure. Gorsuch testified that the hymenal tear and posterior fourchette scar indicated penetrating trauma. Gorsuch stated that the posterior fourchette scar was well healed, and that the anal injury was still healing, but could not estimate the age of the scars beyond recent and not-recent. Gorsuch's conclusion was that "her examination is consistent with sexual abuse based on a physical examination of clear evidence of blunt force trauma and her

history." Gorsuch also stated that the physical symptoms AB exhibited could be considered as indicators of penetration trauma as a result of consensual sex.

On August 21, 2007 the jury returned a verdict of not guilty on two counts of rape which had allegedly occurred prior to November 2000, the time period when the victims testified that the abuse began. The jury returned a guilty verdict on all remaining counts.

\* \* \*

At the close of the State's case, Wolff moved for acquittal for charges based on the dates not being proven for some alleged offenses. He also alleged lack of proof of: force, age of the victims; substantial impairment of SA; and, sexual contact versus conduct. The State dropped two counts of rape by force, one count of rape with substantially impaired victim, and one count of gross sexual imposition (Counts 24, 25, 28, and 31) involving SA because she had been removed from Wolff's home prior to the dates that these four offenses allegedly happened. The trial court otherwise denied Wolff's motion for acquittal.

\* \* \*

[The jury acquitted Petitioner of two counts of rape, but found him guilty of the remaining counts in the Indictment – sixteen counts of rape and nine counts of gross sexual imposition.]  On August 29, 2007, the trial court sentenced Wolff to nine consecutive life sentences, five consecutive ten-year sentences, five consecutive five-year sentences, two consecutive sets of concurrent eighteen-month sentences and merged the remaining convictions.

*State v. Wolff*, No. 07MA166, 2009 WL 1710736 (Ohio App. Ct. June 9, 2009) ("*Wolff I*").

## II. Relevant State Procedural History

**A.    Relevant Trial and Post-Trial Proceedings**

After the trial court completed jury instructions, it indicated to the jury that "the court will place in your possession the exhibits and the verdict forms."  (Tr. 985.)  During its deliberations, the jury sent the trial court a note asking for "all state and defense exhibits[.] Example, reports, police, CSB, CAC, et cetera."  (Tr. 988.)  The trial court declined the request, noting, "You have what you have."  (*Id*.)

Thereafter, Petitioner filed motions for a new trial and for acquittal, generally arguing that there was insufficient evidence to support his conviction and that the trial court had erred in refusing to allow certain areas of inquiry on cross-examination.  (Doc. No. 23-1 at Exs. 6, 7.)  In August 2007, the trial court denied the motions.  (Doc. No. 23-1 at Ex. 8.)

**B.    Direct Appeal**

In his direct appeal, Petitioner, through new counsel, raised, the following assignments of error that are relevant to this petition:

> I.     The trial court erred in denying the motion for acquittal when there was no evidence as to force.
>
> *    *    *
>
> III.    The trial court erred in preventing the cross-examination of the alleged victims regarding prior false allegations of sexual abuse.
>
> IV.    The trial court erred in preventing evidence of prior sexual abuse to be admitted based solely upon Ohio's Rape Shield Statute, without any analysis of whether the probative value of the evidence outweighed the State's interests advanced by

7

protecting the victims.

(Doc. No. 23-1 at Ex. 13.)  On June 9, 2009, the state appellate court affirmed Petitioner's conviction.  *Wolff*, 2009 WL 1710736.

Petitioner, *pro se*, filed a notice of appeal to the Ohio Supreme Court.  (Doc. No. 23-1 at Ex. 16.)  In a memorandum in support of jurisdiction, Wolff raised the following propositions of law:

> I. A defendant is denied his right to confrontation as guaranteed under the Sixth Amendment to the United States Constitution when a trial court limits cross-examination of a state witness on their prior rape accusation for the purpose of establishing the witness's motivation for testifying in order to impeach the credibility of the witness.
>
> II. A defendant is denied his right to confrontation as guaranteed under the Sixth Amendment to the United States Constitution when a trial court limits cross-examination of a state witness's source of sexual knowledge and prior state characterized sexual injuries for the purpose of impeaching the witness's credibility.

(Doc. No. 23-1 at Ex. 17.)  On October 14, 2009, the Ohio Supreme Court declined jurisdiction and dismissed Petitioner's appeal.  *State v. Wolffe*, 914 N.E.2d 1065 (Table), 123 Ohio St.3d 1425 (Ohio 2009).

**C.    Application to Reopen**

In September 2009, while his direct appeal was pending in the Ohio Supreme Court, Petitioner, *pro se*, filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, alleging that his appellate counsel was ineffective in failing to argue that:

8

I. The Trial Court plainly erred by permitting a medical expert witness and the prosecutor to testify as to the veracity of the accusers in violation of Evidentiary Rules and due process, thereby depriving him of fair trial.

II. The jury verdicts are against the manifest weight of evidence and are unsupported by sufficient evidence and the trial court erred in denying motions for acquittal and abused its discretion in denying the jury material exhibits it requested to decide the case causing the verdicts based on empty weight and insufficient evidence.

III. The Appellant was deprived of his right to a fair trial due to ineffective assistance of counsel.

(Doc. No. 23-1 at Ex. 20.)  With respect to the third ground for relief, Petitioner contended that his appellate counsel should have argued that his trial counsel was ineffective by: (1) failing to "raise Rape Shield arguments"; (2) failing to object to the medical expert and prosecutor vouching for the veracity of the victims' statements; (3) failing to introduce into evidence the results of the 2001 rape kits performed on the victims; (4) failing to "fully challenge the inconsistencies and credibility" of the State's witnesses; and (5) committing errors that had the cumulative effect of depriving Petitioner of a fair trial.  (*Id*.)  In support of his argument that trial counsel was ineffective in failing to "raise Rape Shield argument," Petitioner attached numerous documents – police reports, Children's Services Board ("CSB") report, and medical reports – that were not introduced into evidence at trial.  (*Id*.)

In December 2009, the state appellate court denied Petitioner's Rule 26(B) Application, finding that he had failed to demonstrate a genuine issue of material fact regarding whether he had been deprived of the effective assistance of appellate

counsel. *State v.Wolff*, No. 07MA166, 2009 WL 5258457 (Ohio App. Ct. Dec. 31, 2009) ("*Wolff II*"). Petitioner filed a notice of appeal in the Ohio Supreme Court, and, in a memorandum in support of jurisdiction, in which he raised the same grounds asserted in the appellate court. (Doc. No. 23-1 at Ex. 25.) On March 24, 2010, the Ohio Supreme Court declined jurisdiction and dismissed the appeal. *State v. Wolff*, 923 N.E.2d 622 (Table), 124 Ohio St.3d 1523 (Ohio 2010).

**D.    Petition for Post Conviction Relief**

In July 2010, Petitioner, *pro se*, filed a petition for post-conviction relief pursuant to Ohio Revised Code 2953.21, in which he asserted the following grounds for relief:

> I.    Trial counsel's failure to raise Rape Shield arguments deprived petitioner a fair trial.
>
> II.    Petitioner was denied a fair trial and Due Process of law by acts of the Prosecution in knowingly and unlawfully withholding and concealing exculpatory evidence.
>
> III.    Trial Counsel's failure to investigate the competency of S.A. who has a history of mental illness deprived petitioner of a fair trial.
>
> IV.    Trial counsel's failure to consult with and call a sexual abuse expert deprived petitioner of a fair trial.

(Doc. No. 23-2 at Ex. 28.) The State moved for summary judgment and, in November 2010, the trial court granted the State summary judgment and summarily overruled the petition. (Doc. No. 23-2 at Ex. 33.) Thereafter, at the direction of the state appellate court, the trial court issued the following conclusions of law:

> 1.    Defendant's Petition is untimely and does not support the allegation that he was unavoidably prevented from discovering facts to allow an untimely filing.

10

> 2.      Defendants' Petition challenges trial counsel's
>         strategies and tactics which do not support vacating
>         the sentence.
>
> 3.      Defendants' Petition fails to raise any issues which
>         would necessitate the granting of the Petition.

(Doc. No. 23-2 at Ex. 38.)  Petitioner filed a notice of appeal in the state appellate court, and raised the same grounds for relief asserted in his petition for post-conviction relief. (Doc. No. 23-2 at Ex. 39.)  In November 2010, the state appellate court affirmed the trial court's decision to deny Petitioner's post-conviction relief petition, finding that it was untimely and that Petitioner had failed to demonstrate that he qualified for any of the exceptions to the time limitations of Ohio Rev. Code 2953.21.  *State v. Wolff*, No. 10-MA-184, 2012 WL 5993774 (Ohio App. Ct. Nov. 29, 2012) ("*Wolff III*").

Petitioner filed a notice of appeal in the Ohio Supreme Court, and, in his memorandum in support of jurisdiction, raised the same grounds for relief.  (Doc. No. 23-2 at Ex. 46.)  On April 24, 2013, the Ohio Supreme Court declined jurisdiction and dismissed Petitioner's appeal.  *State v. Wolff*, 986 N.E.2d 29 (Table), 2013-Ohio-1622 (Ohio 2013).

### III. Proceedings in this Court

On March 4, 2011, while his petition for post conviction relief was pending in the state appellate court, Petitioner filed his original § 2254 petition in this Court.  (Doc. No. 1.)  On that same date, Petitioner moved to stay proceedings on his petition in order to allow him to exhaust his state court remedies or, in the alternative, for the dismissal of his petition.  (Doc. No. 5.)  Thereafter, the Court dismissed the § 2254 petition without prejudice.  (Doc. No. 6.)  In May 2013, Petitioner moved to reopen this case to and

11

amend his § 2254 petition.  (Doc. Nos. 7, 8.)  On May 14, 2013, the Court granted

Petitioner's motions and reinstated this case.  (Doc. No. 9.)

In July 2013, Petitioner filed his amended § 2254 petition, in which he raises the

following 11 grounds for relief:

I. The petitioner is denied his right to confrontation as
guaranteed under the Sixth Amendment to the United
States Constitution when the trial court limits the
cross-examination of the state's witness on prior false
allegations of rape and their motivations for testifying
in order to reveal their bias, prejudice and motives.

II. The petitioner is denied his right to confrontation as
guaranteed under the Sixth Amendment to the United
States Constitution when the trial court limits the
cross-examination of the state[']s witness's source of
sexual knowledge and prior state-characterized
sexual for purposes of impeaching witness's
credibility.

III. The petitioner is denied his constitutional right to a
fair trial when a medical expert witness and the
prosecutor testify to the veracity of accusers in a case
involving a credibility contest.

IV. The petitioner is denied his constitutional right to have
his guilt proven beyond a reasonable doubt and his
right to a fair trial when the jury verdicts are
unsupported by sufficient evidence.

V. The petitioner is denied his constitutional right to
effective assistance of trial counsel and a fair trial
when trial counsel undermines the proper functioning
of the adversarial process by causing evidence not to
be given to the jury, and fails to object to the improper
vouching of the alleged victims' credibility, and fails to
raise rape shield arguments, all of which affected the
result of the trial.

VI. The petitioner was denied his right to appellate review
when the appeals court finds that the record relied on
to support his claims, that here [*sic*] available at the

12

time of trial are *de hors* the record and declines to
fully review the petitioner's argument.

VII.    The petitioner is denied his right to a fair trial when
the trial court abuses its discretion in denying the jury
its requests for evidence that is relevant to its
accurate determination of the proof of guilt.

VIII.   The appellate court erred when it determined that the
petitioner was not unavoidably prevented from
discovering the facts upon which his claim for relief
was based, and then rendering the remaining of
assignments of error moot, which violates the
petitioner's constitutional rights to Due Process and
effective assistance of counsel.

IX.     The appellate court erred in rendering the petitioner's
claims of ineffective assistance of counsel moot, and
the trial court erred in its conclusion that the
petitioner's three claims of ineffective assistance of
trial counsel failed to raise any issues that would
necessitate the granting of the petition.

X.      The petitioner was denied a fair trial and due Process
of Law by acts of the prosecution in knowingly and
unlawfully withholding and concealing exculpatory
evidence, and the appellate court erred in not
reviewing this error and rendering it moot.

XI.     The petitioner is denied his constitutional right to
effective assistance of appellate counsel on direct
appeal when counsel omits raising errors that could
have affected the result of the appeal in favor of the
petitioner or at least not cause the claims to be
possibly procedurally defaulted.

(Doc. No. 10.)  The parties have completed briefing in this matter and so this petition is

ready for decision.[1]

_____

[1]  In August 2013, the State filed a partial return of writ, in which it argued that
Petitioner's amended § 2254 petition was not timely filed because the relevant period of
limitations had not been tolled by Petitioner's filing of his original habeas petition and
because the relevant period of limitations continued to run after this Court dismissed

## IV. Procedural Issues

### A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The Court of Common Pleas of Mahoning County, Ohio sentenced Petitioner. (Doc. No. 23-1 at Ex. 10.)  Mahoning County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### B.    Claims Not Cognizable on Habeas - Grounds for Relief Six and Eight

It is well established that "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  This is "because 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *Id.* (quoting *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)).  Challenges to post-conviction proceedings "address collateral matters

---

the original petition so that Petitioner could exhaust his state remedies.  (Doc. No. 23.)  The order dismissing the original habeas petition is silent with respect to whether the relevant period of limitations was tolled while Petitioner exhausted his claims in state court.  (Doc. No. 6.)  Further, the State's partial return of writ did not comply with this Court's July 2013 Supplemental Order, which required the State, if seeking the dismissal of the petition on the basis that it was not timely filed, to either: (1) also brief the merits of the grounds for relief; or (2) cite United States Supreme Court or Sixth Circuit precedent directly on point in support its statute of limitations argument.  (Doc. No. 14.)  In the absence of such legal support and analysis by the State, this Court assumes, without deciding, that the grounds for relief presented in the original habeas petition were tolled during the period of dismissal in this case.

and not the underlying state conviction giving rise to the prisoner's incarceration."

*Kirby*, 794 F.2d at 247.  Accordingly, such claims cannot be brought under § 2254.  *Id. at 246*.

Here, the State contends that Petitioner's sixth and eighth grounds for relief are not cognizable on habeas review because they allege errors in his post-conviction proceedings.  In his sixth ground for relief, Petitioner argues that, in its decision denying his Rule 26(B) application to reopen his appeal, the state appellate court erred in rejecting his argument that his appellate counsel provided constitutionally deficient representation – specifically by failing to argue that his trial counsel was ineffective when he failed to "raise Rape Shield arguments" – on the basis that the argument relied on evidence outside the record and, thus, would not have succeeded on appeal.  *Wolff II*, 2009 WL 5258457 at * 7.  Although federal habeas courts review claims of ineffective assistance of appellate counsel raised in properly raised in Rule 26(B) applications, here, Petitioner's sixth ground for relief does not assert ineffective assistance of appellate counsel.  Rather, Petitioner's sixth ground for relief alleges an error in his Rule 26(B) proceedings; specifically, he contends that the state appellate court erred in determining that material in support of his argument was evidence outside of the record.  (Doc. No. 10-4 at 20-21.) The Sixth Circuit has determined that an application under Rule 26(B) "is part of the collateral, postconviction process rather than direct review."  *Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005) (*en banc*). Accordingly, Petitioner's sixth ground for relief, challenging the procedural determinations of the appellate court, is not cognizable on habeas review.  *See Collins*

15

*v. Shewalter*, No. 1:09-CV-2427, 2010 WL 3604656, *4 (N.D. Ohio Sept. 9, 2010)

(Gaughan, J.) (citing *Adkins v.Conteh*, No. 3:05-CV-2978, 2007 WL 461292, **3-4 (N.D. Ohio Feb. 7, 2007)* (Zouhary, J.) ("Because a Rule 26(B) application is a collateral proceedings, allegations of deficiency in this process are not cognizable on federal habeas corpus review.").[2]

In his eighth ground for relief, Petitioner argues that the state appellate court erred in concluding that his petition for post conviction relief pursuant to Ohio Rev. Code 2953.21 was untimely and that none of the exceptions to the relevant time limitations applied to his petition.  This argument alleges error in Petitioner's post conviction proceedings and, thus, is not cognizable on habeas review.  *Roe v. Baker, 316 F.3d 557, 570-71 (6th Cir. 2002)*.  Accordingly, it is recommended that Petitioner's sixth and eighth grounds for relief be dismissed with prejudice.

**C.      Exhaustion and Procedural Default – Grounds One Through Five, Seven, Nine and Ten**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples, 489 U.S. 346, 349 (1989)*; *Riggins v. McMackin, 935 F.2d 790, 793 (6th Cir. 1991)*.  If any state

---

[2] The State also argues that Petitioner's ninth ground for relief is not cognizable on habeas review to the extent that it alleges error in the state appellate court's decision denying his Rule 26(B) application.  Although the State is correct in asserting that any such argument would likely not be cognizable on habeas review because it would allege error in a collateral state proceeding, *see Collins*, 2010 WL 3604656 at * 4, a review of his habeas petition reveals that Petitioner's ninth ground for relief is properly construed as asserting ineffective assistance of counsel as an independent ground for § 2254 relief.  Ground nine is addressed in Section IV(C)(3), *supra*.

procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See* *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See* *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Similarly, a federal court may not review  "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).; *see also* *See* *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the

17

> legitimate state interests behind the procedural rule in light
> of the federal interest in considering federal claims. . . .
> [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate
> and independent state ground, then the petitioner must
> demonstrate . . . that there was "cause" for him to not follow
> the procedural rule and that he was actually prejudiced by
> the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

As a general principle, this Court can dismiss a habeas petition without prejudice to allow the petitioner to return to state court to pursue his available remedies.  *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982).  However,  if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted claim, this Court may deem the claim procedurally defaulted.  *See* *Gray*, 518 U.S. at 161-62 ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Here, the State argues that Petitioner's first through fifth, seventh, ninth and tenth grounds for relief are procedurally defaulted.  Petitioner contends that his actual innocence excuses any procedural default in this case.  (Doc. No. 38 at 1-18.)

### 1.    Grounds One and Two - Confrontation Clause

In his first ground for relief, Petitioner argues that the trial court violated his right to confront witnesses against him by precluding him from cross-examining S.A. regarding her prior accusations of sexual abuse.  Petitioner raised this argument on direct appeal, and the state appellate court concluded that Petitioner had waived review

18

of the argument on appeal by failing to properly raise the issue in the trial court.  *Wolff I, 2009 WL 1710736 at \*\*16-18*.  Specifically, the appellate court concluded that Petitioner had failed to preserve his argument regarding S.A.'s prior false accusations by failing to comply with the requirement, under *State v. Boggs*, 588 N.E.2d 813, 816-17, 63 Ohio St.3d 418, 421-22 (Ohio 1992),  that, before cross-examining an alleged rape victim regarding prior false accusations of rape, a defendant must ask the victim the threshold question whether he or she has made any prior false accusations of rape.[3]  *Id*.

In his second ground for relief, Petitioner argues that the trial court violated his right to confront witnesses against him by preventing the admission of evidence that S.A. had been sexually abused by another individual in the past.  The state appellate court concluded that Petitioner had failed to preserve the issue of S.A.'s prior sexual abuse by failing to comply with the pretrial procedural set forth in Ohio Rev. Code 2907.02(E) for requesting a hearing on the issue of whether evidence regarding S.A's prior sexual activity would be admissible at trial.[4]  *Id*.

---

[3] Under *Boggs*, where a defendant in a rape case intends upon questioning the victim regarding a past false accusation of rape, the defendant must first ask the victim the threshold question whether he or she has made any prior false accusations.  588 N.E.2d 816-17, 63 Ohio St.3d at 421.  If the response is "no," the defendant may not introduce extrinsic evidence, and the trial court has the discretion to allow or preclude further questioning on the topic; if the response is "yes," the court must conduct an *in camera* hearing to determine "whether sexual activity was involved and, as a result, would be prohibited by [Ohio's Rape Shield], or whether the accusation was totally unfounded and therefore could be inquired into on cross-examination."  *Boggs*, 588 N.E.2d at 817, 63 Ohio St.3d at 422.

[4] Ohio Rev. Code 2907.02(E) provides that, "[p]rior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a

The State contends that the procedural rules upon which the appellate court relied to decline to review these claims constitute independent and adequate state grounds such that this Court is precluded from reviewing the merits of these claims. There is no dispute that the state appellate court identified and applied these procedural rules to decline to review the merits of Petitioner's claims. Further, there is no evidence in the record that Petitioner complied with these procedural rules, as he failed to ask S.A. the requisite threshold question whether she had ever made false accusations of rape, and there is nothing in the record reflecting that he requested a hearing as required by Ohio Rev. Code 2907.02(E).[5]  Accordingly, the first two elements of *Maupin* are satisfied with respect to these grounds for relief.

Further, the procedural grounds at issue satisfy the third element of *Maupin*.– whether the procedural grounds are independent and adequate – because they are "independent of the federal question[s]" at issue, *Walker v. Martin,        U.S.      , 131 S. Ct. 1120, 1127 (2011)*, and "firmly established and regularly followed," *Beard v. Kindler, 558 U.S. 53, 60-61 (2009)* (internal quotation marks omitted). The state appellate court

---

hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial."

[5] In his Traverse, Petitioner argues that the state appellate court "ignore[d] large portions of the record," in determining that Petitioner's counsel had not complied with *Boggs*. (Doc. No. 38 at 23-24.)  Specifically, he points to: (1) his trial counsel's reservation of the right to call A.B. and S.A., who testified during the State's case in chief, as defense witnesses (tr. 341-42, 378); (2) his trial counsel's argument to the trial court, after he had already cross-examined A.B. and S.A., that the trial court had improperly prevented him from questioning the victims regarding various topics, including prior accusations (tr. 474-75). A review of these portions of the transcript, however, reveals that Petitioner's counsel did not make the threshold inquiry required by *Boggs*.

did not consider the merits of Petitioner''s underlying claim in determining whether to apply either the "threshold question" rule of *Boggs* or the hearing requirement of Ohio Rev. Code 2907.02(E).  Further, Ohio courts regularly apply each of these rules to preclude review of a defendant's claim that he was deprived of the opportunity to question a witness regarding either past false accusations of rape, or her past sexual activities.  *See, e.g., State v. Acre*, 451 N.E.2d 802, 805, 6 Ohio St.3d 140, 144 (Ohio 1983) (holding that defendant who fails to request a hearing under Ohio Rev. Code 2907.02(E) waives his right to such a hearing); *State v. Netherland*, 724 N.E.2d 1182, 132 Ohio App.3d 252 (Ohio App. Ct. 1999) (same); *State v. McMillian*, No. C-950523, 1996 WL 233866 (Ohio App. Ct. May 8, 1996) (holding that the defendant's failure to make any inquiry regarding prior false accusations on cross-examination precluded the trial court from ruling on the admissibility of the victim's prior false allegations of rape); *State v. Moon*, No. 2002 CA 00028, 2002 WL 31771239 (Ohio App. Ct. Dec. 9, 2002) (finding that the defendant waived any error regarding the victim's past false accusations of rape where his trial counsel failed to make the threshold inquiry required by *Boggs*). Accordingly, the threshold question requirement of *Boggs* and the hearing requirement of Ohio Rev. Code 2907.02(E) both constitute independent and adequate state procedural grounds for declining to review the merits of these claims.

Other than asserting his claim of actual innocence, which, as discussed in Section IV(C)(4), *infra*, is not sufficient to excuse his procedural default, Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of the issues raised in his first and second grounds for relief.

21

Accordingly, these claims are procedurally defaulted and barred from habeas review by this Court.

> **2.      Grounds Three (Vouching), Four (Insufficient Evidence), Five (Ineffective Assistance of Counsel - Claims Raised in Rule 26(B) Application) and Seven (Prohibiting the Jury from Viewing Exhibits)**

In his third, fourth, fifth and seventh grounds for relief, Petitioner asserts the claims raised in his Rule 26(B) Application.   Specifically, in his third ground for relief, Petitioner contends that the prosecutor violated his constitutional rights by eliciting testimony from Nurse Gorsuch that vouched for the credibility of S.A.'s and A.B.'s testimony, and by vouching for the credibility of their testimony during her closing argument.  In his fourth ground for relief, Petitioner argues that there was insufficient evidence to support his conviction because the victims' testimony was inconsistent with other evidence and there was no medical evidence to support their allegations.  In his fifth ground for relief, Petitioner contends that he received ineffective assistance of trial counsel when his trial counsel failed to: (1) introduce the results of the 2001 rape kits performed on S.A. and A.B. into evidence; (2) object to either Gorsuch's testimony vouching for the credibility of the victims' claims or the prosecutor's vouching for their credibility during her closing argument; and (3) "adversarily test" the State's case.  In his seventh ground for relief, Petitioner asserts that the trial court erred in denying the jury's request to view exhibits that were not admitted into evidence at trial.

The State correctly notes that, although Petitioner asserted these claims in his Rule 26(B) application, Petitioner failed to raise these arguments as independent

22

grounds for relief in state court, and they are not exhausted.[6]  Further, to the extent that

the errors at issue in these grounds for relief arise out of the record of proceedings in

the trial court, Petitioner could have raised them on direct appeal.  He failed to do so[7]

and, under Ohio law, *res judicata* now prohibits him from raising the issue in any post-

conviction proceeding.  *See* *State v. Cole*, 443 N.E.2d 169, 171, 2 Ohio St.3d 112, 113

(Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175 (Ohio 1967) (holding

that *res judicata* bars a criminal defendant from raising in post-conviction proceedings

those claims that could have been raised on direct appeal).  The Sixth Circuit has

determined that "the application of *res judicata* is an adequate and independent state

ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell*, 320

F.3d 604, 628 (6th Cir. 2003).  Because Petitioner can no longer raise these claims in

state court, they are procedurally defaulted.

   To the extent that Petitioner's claims do not arise out of the record of

proceedings in the trial court – specifically, his reliance on the results of the 2001 rape

kits to argue in his fifth ground for relief that he received ineffective assistance of

counsel – Ohio law provides a mechanism through which a criminal defendant may

---

   [6] Presentation of claims in the context of ineffective assistance of counsel is not sufficient to "fairly present" them as independent grounds to the state courts. *See, e.g.,* *Wagner v. Smith*, 581 F.3d 410, 417-18 (6th Cir. 2009) (finding that the petitioner failed to exhaust a prosecutorial misconduct claim where he presented it to the state courts in the context of ineffective assistance of counsel, noting that doing so "did not present the *prosecutorial misconduct* claim to the state court in the same legal and factual terms as Petitioner did before this Court") (emphasis in original)

   [7]  Although Petitioner argued on direct appeal that there was insufficient evidence to support his conviction, he based that argument on the contention that the State had failed to offer sufficient evidence of force – an argument different from the one he is asserting here.  (Doc. No. 23-1 at Ex.13.)

raise such a claim of ineffective assistance of trial counsel. *See* Ohio Rev. Code § 2953.21.[9] Petitioner has not availed himself of this procedure with respect to this portion of his fifth ground for relief, and, thus, it is not exhausted. Further, given the 180-day time limitation applicable to post-conviction petitions under Ohio Rev. Code 2953.21, *see* Ohio Rev. Code §§ 2953.21(A)(2), 2953.23(A), Petitioner cannot now return to state court and raise this claim. Accordingly, this portion of his fifth ground for relief is also procedurally defaulted. Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of the issues raised in his third, fourth, fifth and seventh grounds for relief. Even if this Court were to construe Petitioner's argument to assert that his appellate counsel's failure to raise these issues on direct appeal constitutes cause for his procedural default, such an argument would lack merit for the reasons set forth in Section V, *infra* (discussing ineffective assistance of appellate counsel). Accordingly, these grounds for relief are procedurally defaulted and barred from habeas review.

> ### 3. Grounds Nine (Ineffective Assistance of Trial Counsel - Claims Raised in Petitioner's Post-Conviction Petition) and Ten (Exculpatory Evidence)

In his ninth ground for relief, Petitioner asserts that he received ineffective assistance of counsel when his trial counsel failed to: (1) raise "Rape Shield

---

[9] Generally, under Ohio law, *res judicata* bars a defendant from raising a claim of ineffective assistance in proceedings under Ohio Rev. Code 2953.21 where that defendant could have raised the claim on direct appeal. *See Perry*, 226 N.E.2d 104, 10 Ohio St.2d 175, ¶ 7 of the syllabus. However, Ohio courts have recognized that *res judicata* does not apply where, as here, a defendant's claim relies on evidence outside the record. *State v. Smith*, 477 N.E.2d 1128, 1131, n.1., 17 Ohio St,3d 98, 101, n.1. (Ohio 1985).

arguments"; (2) investigate S.A.'s competency to testify at trial; and (3) consult with, or adduce the testimony of, a sexual abuse expert.  In his tenth ground for relief, Petitioner contends that the State withheld exculpatory evidence.  The State correctly notes that Petitioner raised these grounds for relief in his state court petition for post-conviction relief.  The state trial court denied the petition on the basis that it was not timely filed and Petitioner had failed to demonstrate that any of the exceptions to the time requirement of Ohio Rev. Code 2953.21 applied to excuse the untimeliness.  The state appellate court affirmed the trial court decision, finding that Petitioner had "not demonstrated that he was unavoidably prevented from discovering the facts upon which his claim for relief was based," and that, '"consequently, his petition was untimely and, standing alone, constituted a sufficient basis upon which to be dismissed."  *Wolff III*, *2012 WL 5993774 at *4*.

Petitioner does not dispute that his post-conviction petition was untimely.  The state appellate court decision reflects that the court relied on the time requirement to decline to review Petitioner's claim on their merits.  Accordingly, the first and second elements of *Maupin* are satisfied.  Finally, Ohio's timeliness requirements in post-conviction proceedings constitute an independent and adequate state ground for declining to review the merits of a petitioner's claims.  *Townsend v. Gansheimer*, No. *1:08-CV-1089, 2009 WL 589332, * 7 (N.D. Ohio March 9, 2009)* (adopting the report and recommendation of Perelman, M.J.).  Other than asserting his claim of actual innocence, which lacks merit, as discussed in Section IV(C)(4), *supra*, Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of the issues raised in his ninth and tenth grounds for relief.

25

Accordingly, these claims are procedurally defaulted and barred from habeas review.[10]

### 4.    Actual Innocence

A petitioner may satisfy the fundamental miscarriage of justice exception to procedural default by submitting evidence that a constitutional violation has resulted in the conviction of someone who is actually innocent.  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004).  A petitioner relying on actual innocence to overcome a procedural default faces a substantial burden, as "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). A petitioner must advance new evidence not presented at trial to support a claim of actual innocence, but a court's determination as to whether a reasonable jury would have found the petitioner guilty should be based both on the new evidence and on the evidence presented at trial. *House*, 547 U.S. at 537-38.  In addition, the standard permits review only in the extraordinary case: "'[I]n the vast majority of cases, claims of actual innocence are rarely successful.'" *Id.* at 538 (quoting *Schlup*, 513 U.S. at 324).

---

[10] To the extent Petitioner might argue that his appellate counsel's ineffective assistance in failing to raise these claims constitutes cause for his procedural default, that argument would fail.  With the exception of his claim based on trial counsel's failure to raise "Rape Shield arguments," Petitioner did not raise these grounds for relief as bases for ineffective assistance of appellate counsel in his Rule 26(B) application.  It is well established that "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. at 488-89.  The "Rape Shield arguments" raised in Petitioner's Rule 26(B) application are addressed in Section V, *infra* (discussing ineffective assistance of appellate counsel).

Finally, if the asserted new evidence so requires, the court may include in its deliberations assessments of the credibility of witnesses in determining whether a reasonable jury would have convicted the petitioner.  *House*, 547 U.S. at 538-39.

Here, Petitioner bases his claim of actual innocence on various documents attached to his Rule 26(B) application and his petition for post-conviction relief.  He argues that these documents – records of medical exams, rape kit results, CSB family notes, and copies of Internet web pages describing various medical conditions – undermine the credibility of the testimony of S.A., A.B. and Nurse Gorsuch.  According to Petitioner, had these documents been admitted into evidence at trial, he would not have been convicted.  His argument does not meet the high threshold for a claim of actual innocence in this context.

During their testimony at trial, S.A. and A.B. described numerous instances of sexual abuse perpetrated by Petitioner.  Gorsuch testified that some of her physical examination findings were consistent with sexual abuse.  None of Petitioner's evidence in support of his actual innocence claim directly contradicts this testimony or otherwise exonerates him.  Rather, his argument in support of his actual innocence claim constitutes conjecture and supposition that relies on inferences and unsupported conclusions.  For example, he contends that the report of a prior physical examination of S.A. would have offered an explanation for the injury to S.A.'s anus other than sexual abuse by Petitioner.  At trial, however, Gorsuch testified that, while Gorsuch's physical findings were consistent with sexual abuse, the injuries to S.A.'s anus were "nonspecific indicators," meaning that they could have been caused by anything that might overdilate the anus.  (Tr. 523-24.)  Given this testimony – in which Gorsuch conceded

27

that there were other possible explanations for the injuries to S.A's anus –  there is no basis to conclude that the jury would have acquitted Petitioner had it learned of the prior physical examination's findings.

The remainder of Petitioner's argument is similarly conclusory and circumstantial.  He strings together various documents – many of which are likely inadmissible under Ohio's Rape Shield Law and Rules of Evidence – to attack particular topics of the testimony of S.A., A.B., and Gorsuch.  None of his additional evidence, however, refutes the direct testimony of the victims or of Gorsuch.  Accordingly, Petitioner's additional evidence is insufficient to convince this Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt," *Schlup, 513 U.S. at 329*, and his claim of actual innocence is insufficient to overcome his procedural defaults in this case.

### V.  The Merits of Petitioner's Remaining Claims

### A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or resulted in a
> decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State

court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of

29

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id*. at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' rulings on Petitioner's  grounds for relief.

**B.**     **Ineffective Assistance of Appellate Counsel - Ground Eleven**

In his eleventh ground for relief, Petitioner argues that he received ineffective assistance of appellate counsel when his appellate counsel failed to raise the arguments raised in his Rule 26(B) application.  In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  The *Strickland* standard applies "regardless of whether a Petitioner is claiming ineffective assistance of trial counsel or ineffective assistance of

30

appellate counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal quotation marks omitted). Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court. *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000). Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, ____ U.S. ____, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, ____ U.S. ____, 131 S. Ct. 1388, 1403 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

### 1.    Vouching

Petitioner contends that he received ineffective assistance of appellate counsel when his appellate counsel failed to argue, on direct appeal, that the trial court impermissibly permitted Gorsuch and the prosecutor to vouch for the credibility of S.A. and A.B.  The state appellate court concluded that this claim lacked merit and, thus,

Petitioner could not show that he was prejudiced by its omission on direct appeal.  *Wolff II*, 2009 WL 5258457 at * 3.

Petitioner's argument with respect to Gorsuch arises out of her testimony, on cross-examination, that she believed that S.A. was telling the truth about the sexual abuse:

> Q:     Okay.  So you cannot say to a degree of certainty that this scarring and this flattening were caused by any contact that [Petitioner] may have had with [S.A.]; correct?
>
> A:     I could say that it is consistent with [S.A.'s] description.  I can say that.
>
> Q:     It's consistent, but you're accepting her word as true?
>
> A:     Yes.
>
> Q:     You're making an assumption she's telling you the truth?
>
> A:     Yes.

(Tr. 524.)  The trial transcript reflects that Petitioner's trial counsel elicited the testimony at issue in this ground for relief.  Under Ohio's "invited error doctrine," a defendant "will not be permitted to take advantage of an error that he himself invited or induced the trial court to make."  *State ex rel. The V Cos. v. Marchall*, 692 N.E.2d 198, 202, 81 Ohio St.3d 467, 471 (Ohio 1998).  Invited error occurs when defense counsel "was actively responsible for the trial court's error" or "when a party has asked the court to take some action later claimed to be erroneous."  *State v. Campbell*, 738 N.E.2d 1178, 1188, 90 Ohio St.3d 320, 324 (Ohio 2000).  Had appellate counsel raised this issue on direct appeal, it would not have succeeded.  Accordingly, any argument on direct appeal

based on Gorsuch's testimony would have lacked merit, and Petitioner cannot show

either that his appellate counsel's decision to omit this argument constituted deficient

performance, or that he was prejudiced by the omission.

Petitioner's argument with respect to the prosecutor's comments arises out of the

following portion of the State's closing argument:

> All that we require of you is that you use your common
> sense and your reasoning.  Is it reasonable that [S.A.] and
> [A.B.], what they told you is true?  It sure is.

(Tr. 912.)  Under Ohio law, a prosecutor's comments during closing argument provide

the basis for reversible error only where they prejudiced the defendant's substantial

rights by depriving him of a fair trial based on the entire record.  *State v. Treesh*, 739

*N.E.2d 749, 771, 90 Ohio St.3d 460, 480 (Ohio 2001)*; *State v. Lott*, 555 N.E.2d 293,

300, 51 Ohio St.3d 160, 166 (Ohio 1990) ("Prosecutors must avoid insinuations and

assertions calculated to mislead.  They may not express their personal beliefs or

opinions regarding the guilt of the accused, and they may not allude to matters not

supported by admissible evidence.").  "A conviction will be reversed only where it is

clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury

would not have found appellant guilty."  *State v. Benge*, 661 N.E.2d 1019, 1026 (Ohio

1996).

Here, there is no basis for concluding that, absent the comments at issue, the

jury would have acquitted Petitioner.  A review of the entire closing argument reveals

that the prosecutor emphasized that, in addition to the testimony of S.A. and A.B., other

evidence supported the conclusion that Petitioner had sexually abused the girls.  (Tr.

899-913.)  Immediately after the portion of the closing argument identified by Petitioner,

the prosecutor continued:

> Medical evidence backs [the girls' allegations] up.  They
> back each other up.  And, before April 2006, when [A.B.]
> disclosed for the second time, she hadn't even seen [S.A.].
> [S.A.] hadn't been in the house.  They hadn't been able to
> talk about what's been going on.

(Tr. 912.)  The point of the comments was to emphasize that the girls had testified

consistently with one another, and that other evidence supported their testimony –

which is borne out by the record in this case.  *See* *State v. Diar*, 900 N.E.2d 565, 596,

120 Ohio St.3d 460, 487 (Ohio 2008) ("Prosecutors are entitled to latitude as to what

the evidence has shown and what inferences can be drawn from that evidence.  A

prosecutor may state his or her opinion if it is based on the evidence presented at

trial.").[11]  Because these comments were not misleading, and did not refer to

inadmissible evidence, they would not have merited reversal of Petitioner's conviction

had appellate counsel raised them as an assignment of error on direct appeal.

Accordingly, any argument based on the prosecutor's comments would not have

resulted in a different outcome on appeal, and Petitioner cannot show that he was

prejudiced by appellate counsel's omission of this argument.

### 2.    Sufficiency of the Evidence/Manifest Weight

Petitioner contends that his appellate counsel was ineffective in failing to

challenge either the sufficiency of the evidence – specifically with respect to the

element of penetration and the time frame alleged in Count Five of the indictment – or

_____

[11] This Court questions Petitioner's assertion that the prosecutor's remarks were "vouching."  The comments appear to be legitimate commentary on the reasonableness of inferences to be drawn from the testimony.

the manifest weight of the evidence against him.  These arguments lack merit.

Under Ohio law, a defendant's conviction may be reversed upon insufficient evidence only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the elements of the crime were proven beyond a reasonable doubt.  *State v. Goff*, 694 N.E.2d 916, 928, 82 Ohio St.3d 123, 138 (Ohio 1998).  Here, Petitioner contends that there was insufficient evidence of penetration to support his convictions for rape under Ohio Rev. Code 2907.02(A).  His argument fails because a conviction under Ohio Rev. Code 2907.02(A) does not require penetration, but, rather, only "sexual conduct," which is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."  Ohio Rev. Code 2907.01(A).  In this case, the trial transcript reveals that A.B. and S.A. testified to numerous instances in which Petitioner required them to engage in fellatio and cunnilingus, and inserted his penis into their vaginas and anuses.  (Tr. 237-77, 330-34, 343-60, 376-79.)  Their testimony, taken in the light most favorable to the prosecution, is sufficient to support Petitioner's convictions for rape under Ohio Rev. Code 2907.02(A).

Petitioner also contends that there was insufficient evidence to support his conviction on Count Five of the Indictment, which charged him with raping A.B. at some point between January 1, 2002 and June 30, 2002.  (Doc. No. 23-1 at Ex. 1.)  In support of his argument, Petitioner cites to portions of the record that reflect that, for a period of this time, Petitioner did not reside with A.B. because a CSB safety plan that

was signed by the girls' mother in November 2001 – as a result of the first allegations

that Petitioner had assaulted them –  prohibited him from doing so.  The transcript of

trial, however, reflects that Petitioner moved back in with A.B. and S.A.'s mother –

where A.B. permanently resided and where S.A. visited every other weekend and for

several weeks during the summer – in late January or early February 2002.  (Tr. 634-

35, 637, 852-53.)  Accordingly, the fact that the safety plan prevented Petitioner from

having contact with the victims for a certain period of time does not preclude the

conclusion that Petitioner raped A.B. during the period of time alleged in Count Five.

Accordingly, any argument based on these specific contentions regarding the

sufficiency of the evidence in support of Petitioner's conviction would not have resulted

in a different outcome on appeal, and Petitioner cannot show either that appellate

counsel's decision to omit the argument constituted deficient performance, or that he

was prejudiced by appellate counsel's omission of these issues on appeal.

Petitioner also contends that his appellate counsel was ineffective in failing to

argue that Petitioner's conviction was against the manifest weight of the evidence.[12]

Particularly, Petitioner points to various inconsistencies between the victims' statements

to others and their trial testimony – regarding the number of years over which the

assaults had occurred and the details of the assaults – and to defense witness

testimony that S.A. and A.B. had recanted all of their allegations and were "liars."  He

---

[12] Generally, a petitioner's independent claim that his conviction was against the
manifest weight of the evidence is not cognizable on federal habeas review.  *Johnson v.
Konteh*, 597 F. Supp. 2d 747, 754 (N.D. Ohio 2009) (citing *Herrera v. Collins*, 506 U.S.
390, 401-02 (1993)).  In this case, however, Petitioner does not raise manifest weight
as an independent claim, but, rather as a basis for alleging that he received ineffective
assistance of counsel.

also argues that there were inconsistencies in the medical testimony offered at trial, and that his appellate counsel should have offered the materials attached to his Rule 26(B) application to emphasize the inconsistencies in the evidence against him.

Under Ohio law, an appellate court conducting a manifest-weight analysis "sits as a 'thirteenth juror' and may disagree with the fact finder's resolution of the conflicting testimony."  *State v. Jackson*, 863 N.E.2d 223, 226, 169 Ohio App.3d 440, 444 (Ohio App. Ct. 2006) (citing *State . Thompkins*, 678 N.e.2d 541, 78 Ohio St.3d 380 (Ohio 1997)).  The appellate court "'reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction*.'"  *Thompkins*, 678 N.E.2d at 547, 78 Ohio St.3d at 387 (quoting *State v. Martin*, 485 N.E.2d 717, 720-21, 20 Ohio App.3d 172, 175 (Ohio App. Ct. 1983)) (emphasis added).

In this case, in denying his Rule 26(B) application, the state appellate court rejected Petitioner's argument that his conviction was against the manifest weight of the evidence.  The appellate court noted that, although there were "inconsistencies and victim-witness credibility issues that counsel could have raised in [Petitioner's] direct appeal," there was "substantial evidence upon which the jury could have reasonably concluded that all the elements of the offenses were proven beyond a reasonable doubt."  *Wolff II*, 2009 WL 5258457 at *5.  This Court agrees with the decision of the

state appellate court, which is supported by the record.  Accordingly, the record does not support the conclusion that, had Petitioner's counsel raised a manifest weight argument on direct appeal, the outcome of Petitioner's appeal would have been different.  Thus, Petitioner cannot show that either that his appellate counsel's performance was deficient, or that he was prejudiced by his appellate counsel's decision to omit this argument.

### 3.    Jury's Request for Exhibits Not Admitted Into Evidence

Petitioner asserts that his appellate counsel was ineffective in failing to argue that the trial court erred when it declined to allow the jury to view exhibits that had not been admitted into evidence.  Under Ohio law, however, "[n]o article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement."  Ohio Rev. Code 2945.35.  Petitioner's argument is frivolous and would not have been successful on appeal.  Petitioner cannot show that his appellate counsel's failure to raise this issue constituted deficient performance, or that he was prejudiced by the omission of this argument on appeal.

### 4.    Ineffective Assistance of Trial Counsel

Petitioner asserts that his appellate counsel was ineffective in failing to raise claims of ineffective assistance of trial counsel on direct appeal.  Specifically, Petitioner argues that his trial counsel was ineffective in failing to: (a) adequately raise arguments related to the Rape Shield Statute; (b) object to Gorsuch's testimony and the prosecutor's statements vouching for S.A. and A.B.'s credibility; (c) introduce the results from the 2001 rape kits into evidence; and (d) challenge inconsistencies in, and the

38

credibility of, the testimony of the State's witnesses.  Further, Petitioner contends that

his trial counsel's cumulative errors deprived him of the effective assistance of counsel.

Ohio courts apply the *Strickland* standard to claims of ineffective assistance of trial

counsel.  *See, e.g., State v. Treesh*, 739 N.E.2d 749, 778, 90 Ohio St.3d 460, 489

(Ohio 2001).  Accordingly, in order to succeed in such a claim on direct appeal,

Petitioner was required to demonstrate "first, that counsel's performance was deficient

and, second, that the deficient performance prejudiced the defendant so as to deprive

him of a fair trial."  *Id*. (citing *Strickland*, 466 U.S. at 687.)

### a.    Rape Shield Arguments

With respect to Ohio's Rape Shield statute, Petitioner contends that his trial

counsel was ineffective in two ways: first, by failing to request a hearing on the issue of

whether evidence of S.A.'s prior sexual abuse would be admissible at trial; and, second,

by failing to ask S.A. the threshold question whether she had previously made false

accusations of sexual abuse.  In its decision denying his Rule 26(B) application, the

state appellate court rejected these arguments on the basis that, even if trial counsel's

failure to raise these issues constituted deficient performance, Petitioner had not shown

that he was prejudiced, and, thus, this argument would not have succeeded on appeal.

*Wolff II*, 2009 WL 5258457 at **6-7.

Here, the record reveals that trial counsel neither requested a pretrial hearing

under Ohio Rev. Code 2907.02(E), nor asked S.A. the threshold question necessary to

trigger the analysis of whether her prior false accusations of rape – if any – would be

admissible at trial.  The record does not reveal, however, the extent to which defense

counsel attempted to introduce evidence related to S.A.'s prior allegations of sexual abuse.  At one point during defense counsel's cross-examination of S.A., counsel and the trial court engaged in a sidebar discussion that was not transcribed for the record. (Tr. 369.)  Thereafter, defense counsel completed his cross-examination of S.A.  The next day, defense counsel argued that the trial court had violated Petitioner's constitutional right to confrontation by limiting the scope of his questions on cross-examination.  (Tr. 474.)  Specifically, defense counsel indicated that, had the trial court permitted him "to ask certain questions of two specific witnesses," he would have introduced evidence that S.A. had previously accused two other men, as well as her grandparents, of sexually abusing her, and that one of those individuals had been acquitted of charges arising out of those accusations.  (Tr. 474-75.)  The State argued that defense counsel had failed to request the pretrial hearing required by Ohio Rev. Code 2907.02(E), and that *Boggs* would have precluded trial counsel from questioning S.A. regarding her past allegations because those allegations involved sexual activity. (Tr. 476.)  The trial court rejected defense counsel's arguments, noting that it was "bound by the statutes and the position of the Ohio Supreme Court at this time."  (Tr. 477.)

To the extent that the record suggests that defense counsel's failure to raise these issues at the required time or in the required manner constitutes deficient performance, Petitioner cannot show that he was prejudiced by these failures.  With respect to the evidence of S.A.'s prior sexual abuse, Ohio's Rape Shield statute precludes the admission of evidence of specific instances of a rape victim's sexual activity "unless it involves evidence of the origin of semen, pregnancy, or disease, or

40

the victim's past sexual activity with the offender."  Ohio Rev. Code 2907.02(D).  In its

post-trial decision denying Petitioner's motion for acquittal, the trial court concluded that

"none of the exceptions" to the Rape Shield law "were present in this case," and, thus,

there was no error in precluding the admission of evidence of S.A.'s prior sexual abuse.

(Doc. No. 23-1 at Ex. 8.)  Petitioner does not explain – and the record does not reflect –

how evidence related to the fact that S.A. had previously been sexually abused would

have satisfied one of the exceptions to the Rape Shield statute such that it would have

been admissible at trial.  Petitioner argues throughout his petition that evidence related

to S.A.'s past sexual abuse was relevant to the issue of her "sexual knowledge."  This

issue does not fall within any of the exceptions to the Rape Shield statute and, thus,

Petitioner's argument provides no basis for concluding that, had his trial counsel

requested a hearing under Ohio Rev. Code 2907.02(E), the trial court would have

admitted the evidence at trial.  Accordingly, he cannot show that, had his appellate

counsel raised this argument on direct appeal, it would have succeeded.  Thus,

Petitioner cannot demonstrate that he was prejudiced by the omission of this argument

on direct appeal.

Similarly, Petitioner cannot show the requisite prejudice resulting from his trial

counsel's failure to ask S.A. the threshold question whether she had previously made

false allegations of sexual abuse.  In its decision denying his Rule 26(B) application, the

state appellate court concluded that the record did not contain sufficient information to

determine whether Petitioner would have ultimately succeeded in introducing the

relevant evidence at trial:

> Although trial counsel stated on the record that S.A. had

41

> previously made sexual abuse allegations against Clemente
> Alicia, Mark Bilchik, as well as her grandparents, there is no
> way to discern from the record whether trial counsel would
> have successfully proven that any or all of these allegations
> involved a complete absence of proof of sexual activity.
> Without such information, this court would be unable to
> conclude there was a reasonable probability that, but for the
> deficiency of trial counsel, the outcome of [Petitioner's] trial
> would have been different.

*Wolff II*, 2009 WL 5258457 at *7.  Review of the record reveals that the state court

reasonably concluded that the record contained no evidence that S.A.'s prior

accusations involved a complete lack of sexual activity, such that they may have been

admissible under *Boggs*.  *See* 588 N.E.2d at 816-17, 63 Ohio St.3d at 421 ("False

accusations, where no sexual activity is involved, do not fall within the rape shield

statute.  Therefore, a defendant is permitted under Evid. R. 608(B), in the court's

discretion, to cross-examine the victim regarding such accusations if clearly probative of

truthfulness or untruthfulness.  However, the defendant will be bound by the answers

given by the victim.")  Absent some indication in the record that the evidence related to

the prior allegations did not involve proof of sexual activity – or that S.A. would have

admitted to having made a prior false accusation of rape – there is no basis to conclude

that, had defense counsel asked S.A. the threshold question required by *Boggs*, the

trial court would have ultimately permitted defense counsel to pursue this issue on

cross-examination.  Accordingly, Petitioner cannot establish that, had appellate counsel

raised this argument as a basis for ineffective assistance of trial counsel on direct

appeal, the argument would have succeeded.  Thus, Petitioner cannot demonstrate that

he was prejudiced by the omission of this argument on direct appeal.

### b.        Failure to Object to Vouching

Petitioner contends that his appellate counsel was ineffective in failing to argue that trial counsel was ineffective when he did not object to Gorsuch's testimony vouching for the girls' credibility or to the prosecutor's comments in her closing argument.  As previously discussed, however, it was defense counsel who elicited the relevant testimony from Gorsuch on cross-examination, and the prosecutor's comments did not rise to the level of misconduct such that they merited reversal of Petitioner's conviction.  *Supra*, at section V.B.1.  Accordingly, Petitioner cannot establish that, had appellate counsel raised these grounds for ineffective assistance of trial counsel on direct appeal, they would have succeeded; thus, he cannot demonstrate that appellate counsel's decision to omit these arguments on direct appeal constituted deficient performance, or that he was prejudiced by their omission on direct appeal.

### c.        2001 Rape Kit

Petitioner asserts that his trial counsel was ineffective in failing to introduce the results of the 2001 rape kit performed on S.A. into evidence at trial, and that, accordingly, his appellate counsel was ineffective in failing to raise this omission as a basis for ineffective assistance of trial counsel on direct appeal.  The record reflects that, during proceedings outside the presence of the jury,  Petitioner's defense counsel indicated that he was aware of the results of the 2001 rape kit, but had determined that he would not introduce those results into evidence:

> Your honor, I've run into a small problem with my evidentiary chain in regard to a BCI report concerning a rape kit of [S.A.] The doctor who took the rape kit unfortunately was unable to be found, although we were looking for him.  In light of that, I

> have an evidentiary chain issue that I can't do, but I would like to proffer for the record at this time some testimony and some exhibits to go forward.

(Tr. 700-01.)

In its decision denying Petitioner's Rule 26(B) application, the state appellate court concluded that trial counsel's decision not to introduce this evidence constituted sound trial strategy and, thus, did not constitute deficient performance.  *Wolff II*, 2009 WL 5258457 at *8.  Under Ohio law, it is well established that the decision whether to call a particular witness or present certain evidence falls "within the rubric of trial strategy and will not be second guessed by a reviewing court."  *Treesh,* 739 N.E.2d at 778-79, 90 Ohio St.3d at 490.  Here, Petitioner's defense counsel explained to the trial court that he did not intend upon introducing the 2001 rape kit results into evidence because there was a break in the chain of custody and he could not locate a witness essential to the admissibility of that evidence.  Given that there was a break in the chain of custody – a fact likely to preclude admission of the exhibits – the results of the 2001 rape kit, even if admitted, would likely have had little probative weight.  Accordingly, trial counsel's decision not to introduce the results constituted trial strategy rather than deficient performance.  Thus, this argument would not have succeeded on direct appeal, and Petitioner cannot show either that his appellate counsel's performance was deficient or that he was prejudiced by the omission of this argument on direct appeal.

### d.  Cross-Examination

Petitioner argues that his defense counsel failed to effectively challenge the inconsistencies in the State's evidence and the credibility of the State's witnesses at trial.  He does not point to any specific instances of testimony or items of evidence that

44

his defense counsel allegedly failed to challenge.  The record reflects that, on cross-examination, Petitioner's defense counsel emphasized contradictions and inconsistencies between the trial testimony S.A. and A.B. and their prior statements. (Tr. 277-330, 335-42, 306-76.)  During his closing argument, defense counsel focused on these contradictions and inconsistencies to argue that the girls were not reliable witnesses.  (Tr. 918-19 ("Now, we have [S.A.] once again.  Who do you believe?  I wasn't there at all or I was there.  It happened; it didn't happen. . . . This girl has problems with memory.  This girl has problems with what's happening.  Can we believe this even happened at that point in time?  I think not."); Tr. 920 ("They go to the hospital.  What do we believe?  And can we believe anything [S.A.] tells us?  It started the year before Christmastime; maybe it started Thanksgiving time; maybe I was never at the house in 2001, I don't know.  That's doubt.  All these things I'm telling you why and crossing these out is these things raise doubt.").)  The record reflects that defense counsel challenged the State's witnesses in a manner that was consistent with his trial strategy of demonstrating that they were not reliable.  Accordingly, had appellate counsel raised this issue on direct appeal, it would not have succeeded; thus, Petitioner cannot show either that his appellate counsel's performance was deficient or that he was prejudiced by the omission of this argument on direct appeal.

### e.    Cumulative Errors

Finally, Petitioner contends that his appellate counsel was ineffective in failing to argue that his trial counsel's cumulative errors violated his right to effective assistance of counsel.  Petitioner, however, cannot show either the deficient performance or the prejudice required to succeed on this claim because, as previously discussed, he has

failed to demonstrate that his trial counsel was ineffective in any of the ways alleged in his Rule 26(B) application.  Accordingly, this argument would not have succeeded on appeal, and Petitioner was not prejudiced by its omission.

With respect to each of his grounds for asserting ineffective assistance of appellate counsel, Petitioner fails to demonstrate either that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by his counsel's performance.  Accordingly, he has failed to overcome the "substantial burden" of establishing ineffective assistance of counsel,  *Premo v. Moore*, ____ U.S. ___, 131 S. Ct. 733, 745 (2011), and his claims do not merit habeas relief in this case.

## VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: March 28, 2014                              */s/ Nancy A. Vecchiarelli*
                                                   United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

46